UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEONARD WAYNE TAYLOR,

    Petitioner,

v.                                            Case No.  2:24-cv-183-JLB-NPM

RICKY DIXON,

    Respondent.
_____/

## ORDER

This matter is before the Court on the petition for writ of habeas corpus filed by Petitioner Leonard Wayne Taylor, a prisoner of the Florida Department of Corrections.  (Doc. 1.)  Petitioner challenges the findings and the loss of gain time resulting from a state disciplinary proceeding.  (Id.)

After reviewing the entire record in this case, including the pleadings and the documents related to Petitioner's disciplinary hearing, the Court concludes that Petitioner is not entitled to habeas corpus relief.

        I.        **Background and Procedural History**

Petitioner received a disciplinary report (DR) on November 28, 2020, at Moore Haven Correctional Facility for disobeying a verbal or written order.  (Doc. 1 at 7, 8–9.)  The incident giving rise to the challenged disciplinary proceeding was described in the DR's statement of facts as follows:

> On November 28, 2020 at approximately 0620 hours while assigned as Alpha and Delta Dorm housing supervisor at Moore Haven Correctional/Rehabilitation Facility, I Sergeant J. Maines was assisting with feeding in Alpha

> Dorm Wing Three when I instructed Inmate Taylor, Leonard #692400 (whom is assigned to A3121L) to pull up his pants and tuck his shirt in while he was in the hallway for feeding. I gave Inmate Taylor another verbal order to pull up his pants and tuck his shirt in while he was in the hallway, when he stated, "I will but I ain't in no rush for you!" Inmate Taylor still did not comply with the verbal orders given which places him in violation of 6-1 disobeying verbal or written order – any order given to an inmate or inmates by a staff member or other authorized person. Inmate Taylor was placed in hand restraints and escorted to medical for a pre-confinement and placed in a secure cell in restricted housing unit where he will remain pending the outcome of this disciplinary report.

(Doc. 12-1 at 41.)   Petitioner received notice of the charges against him on December 2, 2020.  (Id. at 41, 45.)  He was offered staff assistance at the time, which he declined.  (Id. at 41.)  Petitioner provided a written statement, contending that he did not initially realize that Sergeant Maines had asked him to tuck in his shirt.  (Doc. 12-2 at 49.)  But after she yelled at him a second time, he told her he did not know that he needed to rush.  (Id.)  He stated that he "completed tucking in the shirt & then continued forward [in] the line."  (Id.)

A disciplinary hearing was conducted on December 3, 2020.  (Doc. 12-1 at 41.)  The disciplinary committee determined that Petitioner was guilty of the DR infraction and found as follows:

> Inmate Taylor plead not guilty to the rule infraction 6-1. The disciplinary hearing team finds inmate guilty. The team based [its] decision on an [impartial] investigation, witness statement and the statement written by Sergeant J. Maines: While assisting with feeding in Alpha Dorm Wing Three, I instructed Inmate Taylor to pull up his pants and tuck his shirt in while he was in the hallway for feeding. I gave Inmate Taylor another verbal order to pull up his pants and tuck his shirt in while in the

2

> hallway, when inmate stated "I will but I ain't in no rush for you!" Inmate Taylor still did not comply with the verbal order given.

(Id.) As a result of the disciplinary committee's decision, Petitioner received thirty days of disciplinary confinement and forfeited sixty days of future gain time. (Id.)

After exhausting his administrative grievances, Petitioner filed a petition for writ of mandamus with the Second Judicial Circuit Court in and for Lean County seeking review of the disciplinary proceedings. (Doc. 12-1.) He raised many issues, including the four claims raised now. (Id.)[1] The state circuit court denied in part and dismissed in part his petition. (Doc. 12-4.) On January 16, 2024, the First District Court of Appeal dismissed the circuit court's order without a written opinion. (Doc. 12-5.)

Petitioner filed this petition on February 23, 2024. (Doc. 1.)

## II.   Legal Standards

### A.   28 U.S.C. § 2254

A state prisoner who is deprived of gain time as the result of a prison disciplinary proceeding that allegedly violated due process may seek federal habeas review, but his petition must be reviewed under the standards of both 28 U.S.C. § 2254(d) and 28 U.S.C. § 2241. Medberry v. Crosby, 351 F.3d 1049, 1054 (11th Cir. 2003). Under this deferential review standard, habeas relief may not be granted

---

[1] In his state petition for writ of mandamus, Petitioner challenged two DRs he received on November 28, 2020, one for disobeying a verbal or written order, and another for the possession of contraband. (Doc. 12-1.). Here, he does not challenge the DR he received for possessing contraband.

with respect to a claim adjudicated on the merits in state court unless the state court's decision on the matter:

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). Moreover, a highly deferential standard of review applies to the reasonableness of a state court's determination of facts. Cullen v Pinholster, 563 U.S. 170, 180 (2011). That review "is limited to the record that was before the state court that adjudicated the claim on the merits." Id.

  B. **Wolff v. McDonnell**

The Supreme Court's holding in Wolff v. McDonnell, 418 U.S. 539 (1974) governs the due process protections afforded a prisoner who loses credits as a result of a disciplinary proceeding. Because disciplinary proceedings are not part of a criminal prosecution, the full panoply of rights due to a defendant in a criminal proceeding does not apply. Id. at 556. Instead, under Wolff, such a prisoner is entitled to: (1) advance written notice of the charges and at least 24 hours to prepare a defense; (2) an opportunity—consistent with institutional safety and correctional goals—to call witnesses and present documentary evidence in his own behalf; and (3) a written statement by the factfinders of the evidence relied upon and reason for the disciplinary action. Id. at 563–66. Also, the Supreme Court explained that there must be "some evidence" to support the findings of the disciplinary hearing team to satisfy due process.

### III. Discussion

Petitioner first raised the same claims here in his state petition for writ of mandamus. The circuit court denied the petition, finding that Petitioner received due process during the DR investigation and hearing. The court explained:

> Petitioner received advanced written notice of the charges against him in advance of the December 3, 2020, hearing. Petitioner was provided the opportunity to submit a witness statement regarding his version of the events, and he did provide a written statement. Petitioner was given the opportunity to name witnesses in his defense; and he did not list any witnesses and marked "X" in the box indicating such. Petitioner was also provided the opportunity to request physical or documentary evidence in his defense, and he did not list any evidence and marked a "X" in the box indicating such. Finally, Petitioner received a written statement by the fact finder detailing the evidence relied on and the reasons for the disciplinary action in this case. Thus, Petitioner received all the due process protections of Wolff.

(Doc. 12-4 at 8.) The state court then separately addressed Petitioner's individual claims and explained how it had reached its conclusions. (Id. at 8–15.) The First DCA dismissed his appeal without a written opinion. (Doc. 12-5 at 1.) In the case of a silent affirmance or dismissal (as here), a federal habeas court generally "looks through" the unreasoned opinion and presumes that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Wilson v. Sellers, 584 U.S. 122, 125–26 (2018). Thus, this Court will consider whether the reasons provided in the circuit court's written opinion comport with due process.

A.     **Grounds One and Two**

Grounds One and Two are related and will be addressed together. In his first ground, Petitioner asserts that he was not allowed to postpone his disciplinary hearing to obtain four eyewitness written statements or to procure their live testimony. (Doc. 1 at 6.) He asserts that he has glaucoma and was without his glasses when he received a copy of the charge. Therefore, he had to borrow his cellmate's inadequate eyeglasses to read it. (Id. at 9.) Petitioner asserts that he did not understand the charge. And he asserts that it was not until after the investigating officer left and his cellmate read the entire charge to him that he realized he was accused of not complying with a verbal order to tuck in his shirt. (Id.) He asserts that he would have called witnesses to testify that he eventually tucked in his shirt and did not do so immediately because he was holding a cup when Sergeant Maines ordered him to do so. (Id.) In Ground Two, Petitioner asserts that he did not understand the charge because the investigator failed to read the charging statement out loud. (Id. at 6.)[2]

The state court found Ground One meritless. (Doc. 12-4 at 8.) It noted that

---

[2] As an initial matter, the Court notes that Petitioner complains that the disciplinary board did not comply with various sections of the Florida Administrative Code during the disciplinary process. But in a federal habeas petition, the question is not whether state law or an administrative departmental policy was violated, but rather is limited to whether Petitioner's allegations rise to the level of a federal constitutional violation and whether the procedural deficiencies are ones that violated Petitioner's due process rights guaranteed to him under the Fourteenth Amendment of the United States Constitution. Therefore, as explained above, Petitioner's alleged due process claims are measured according to the test established by the United States Supreme Court in Wolff v. McDonnell.

Petitioner had not asked that any witness be interviewed and, therefore, he waived his opportunity to do so. (Id. at 8.) The court explained:

> If Petitioner wished to call these witnesses, he could have. To the extent that he claims he wasn't able to because he did not have his glasses on to read the statement of facts during the investigation and did not fully understand the charge to call witnesses, such an argument is unavailing. Petitioner could have requested them, and the investigating officer could have attempted to ascertain [the witnesses'] statements. However, since Petitioner failed to request them, there was no need to do so. Petitioner has failed to demonstrate any rule violation, let alone a violation of due process.

(Id. at 9.) Because Petitioner did not list witnesses to be interviewed during the investigation process—even though given an opportunity to do so—the state court determined that the disciplinary team was not required to postpone the investigation. (Id. at 10.) As to Petitioner's argument that the charge was not read to him when delivered (Ground Two), the state court denied it as follows:

> Petitioner declined staff assistance during the delivery of the charge. If Petitioner did not understand the charge, he could have asked for staff assistance, which he declined. . . . To the extent Petitioner claims the charging officer failed to deliver the charges to him and/or read them to him, his claim is meritless. "[Petitioner] received a copy of [his] charges and signed for them." Petitioner has failed to rebut the presumption that prison officials have acted properly in the performance of their duties. "[T]here is a presumption that public officials act properly in the performance of their duties." Purdy v. Mulkey 228 So. 2d 132, 136 (Fla. 3d DCA 1969); see also Buenoano v. State, 565 So.2d 309, 311 (Fla. 1990).
> . . .
> [Petitioner's] only support for his claims are his own conclusory allegations that are unsupported by fact or the evidence in the record. Petitioner has failed to rebut the presumption that prison officials have acted properly in the performance of their duties. Further, his argument is

7

> unavailing as he completed all other parts of the investigation documents.

(Doc. 12-4 at 10–11.)

Petitioner does not explain how the state court's rejection of these claims was contrary to Wolff or based upon an unreasonable determination of the facts. He does not dispute the court's factual finding that he waived his option of presenting witnesses by signing the witness disposition form, which clearly explained that his failure to list his witnesses would result in a waiver of his right to present them. (Doc. 12-2 at 50–51.) Nor does Petitioner dispute that he declined the offer of staff assistance. (Id. at 48.) Instead, Petitioner explains that he initially thought he was being charged only with dawdling after Sgt. Maines ordered him to tuck in his shirt. (Doc. 1 at 9.) Only later (after his cellmate read the entire charging document to him) did he realize that he was actually being charged with not tucking in the shirt at all. (Id.) During his hearing, Petitioner asked for a delay so that he could find witnesses to testify that he had, in fact, tucked in his shirt (albeit a while after Sgt. Maines had ordered him to do so), but the request was denied. (Id. at 9–10.)

Under Wolff, a prisoner should generally be allowed to present defense witnesses at a disciplinary hearing. See Wolff, 418 U.S. at 566 ("We are . . . of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."). Wolff does not, however, require a prison to provide multiple opportunities for the prisoner to do so. To the contrary, the Wolff court recognized that "[p]rison officials

must have the necessary discretion to keep the [disciplinary] hearing within reasonable limits[.]" Id. The Court further explained:

> The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

(Id. at 566–67.); see also Ponte v. Real, 471 U.S. 491, 499 (1985) ("Given [Wolff's] significant limitations on an inmate's right to call witnesses, and given our further observation in Wolff that '[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators,' it may be that a constitutional challenge to a disciplinary hearing . . . will rarely, if ever, be successful.") (citation omitted).

Here, Petitioner argues that he did not understand the gravity of the charge against him and that he did not have his glasses available to read the description in the charging document. However, he was well aware of his vision difficulties when he declined staff assistance. Moreover, while Petitioner asserts that the staff member who brought the charging documents to him did not read the facts out loud, he does not assert that he asked him to do so before declining staff assistance. The record before this Court shows that Petitioner received advanced notice of the charges against him, an opportunity to call witnesses to describe what occurred, and a written statement informing him that the disciplinary team based its finding

9

of guilt on Sergeant Maines's statement, which it believed. In short, the state courts reasonably concluded that Petitioner received all the process he was due under Wolff. Petitioner offers no clearly established federal law suggesting that a prisoner's own mistake regarding the nature of the charge against him imposes additional due process requirements on prison officials or turns their refusal to allow him a second opportunity to call witnesses into a constitutional violation. Petitioner is not entitled to habeas corpus relief on Grounds One or Two.

### B.     Ground Three

Petitioner asserts that charging officer Sergeant Maines violated due process and the Americans with Disability Act (ADA) by impounding his glasses, thus impeding his ability to see clearly during the investigation of the charges. (Doc. 1 at 6.) With no supporting facts regarding the confiscation of the eyeglasses, the Court cannot consider this ground. Further, the ADA prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of the individual's disability. 42 U.S.C. § 12132. An independent civil cause of action exists to remedy that alleged discrimination. Simply put, claims for relief under the ADA do not concern the execution of a sentence, and the Court will not address this claim in a section 2241 petition. See Gorrell v. Hastings, 541 F. App'x 943, 945 (11th Cir. 2013) (affirming dismissal of ADA claim raised in section 2241 petition). Petitioner is, of course, free to assert these claims in a separate action.

### C.     Ground Four

Petitioner asserts that the disciplinary team refused to consider the tight waistband of the pants he was wearing on the morning of the event. (Doc. 1 at 7.)

10

He asserts that the pants' tight elastic waistband would refute Sergeant Maines's statement that she "instructed Inmate Taylor to pull up his pants." (Id. at 12.) The circuit court denied the claim, noting that "Petitioner did not request that witnesses be interviewed, nor any physical evidence be reviewed during the investigation of the DR in question." (Doc. 12-4 at 12.) The First DCA summarily dismissed the appeal.

This claim suffers from the same defect as Grounds One and Two. Petitioner does not explain how the state circuit court's rejection of Ground Four was contrary to Wolff or based upon an unreasonable determination of the facts. As stated by the circuit court, Petitioner signed the "Documentary or Physical Evidence Disposition" and noted that he had no physical evidence to present. (Doc. 12-2 at 51.) That Petitioner later changed his mind about presenting evidence does not impose an additional due process requirement on prison officials.

Moreover, Wolff does not require that tangible evidence be physically present at a prison disciplinary hearing. See, e.g., Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992) ("[Prisoner] had no [due process] right to have the beverages found in his cell preserved until the disciplinary hearing"). While showing the pants' tight waistband to the disciplinary team may have buttressed Petitioner's assertion that his pants were not sagging, this Court is not required to re-weigh evidence. Instead, this Court's only role is to examine whether the state courts reasonably concluded that Petitioner received due process during the proceeding and that the prison officials satisfied the "some evidence" standard in Walpole v. Hill before depriving Petitioner of good time credits. 472 U.S. at 445, 455-56 (1985). As the state courts

11

concluded and explained supra, Petitioner received the process due under Wolff. Under Hill, as long as there is any record evidence to support the disciplinary finding, the federal court cannot revisit the merits of the disciplinary team's decision. Here, based on Sergeant Maines's written statement, that standard was met. Petitioner is not entitled to habeas corpus relief on Ground Four.

## IV.  Conclusion

The disciplinary proceedings here complied with the procedural requirements set forth in Wolff and Hill. Accordingly, because the decision from the state courts was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, it is entitled to deference. Habeas relief is therefore not available. Finally, because the Court was able to resolve the entire petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

Accordingly, it is ordered that:

1. The petition for writ of habeas corpus filed by Leonard Wayne Taylor is **DENIED**.
2. The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Petitioner, deny any pending motions as moot, terminate any deadlines, and close this case.

### Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A prisoner

12

seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented [are] adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Upon consideration of the record, the Court declines to issue a COA. Because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on September 17, 2024.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record